Original
No. 2000-621

## PETITION OF UNION LEADER CORPORATION

Argued: January 17, 2002
Opinion Issued: April 16, 2002

*Malloy & Sullivan,* of Manchester (*Gregory V. Sullivan* on the brief and orally), for the petitioner.

*Philip T. McLaughlin,* attorney general (*Douglas N. Jones,* assistant attorney general, on the brief, and *Daniel J. Mullen,* associate attorney general, orally), for the State.

BRODERICK, J. This is a petition for original jurisdiction brought by the petitioner, Union Leader Corporation, following the denial by the New Hampshire Superior Court of its request for copies of agendas and minutes of all meetings of the superior court judges in 1987. We deny the petition.

After receiving the Union Leader's written request in September 2000, legal counsel for the superior court denied it, stating:

> The meetings to which you refer are not public proceedings, but are internal administrative meetings held for the purpose of discussing the day-to-day business of the functioning of the Superior Courts, including discussions of current personnel issues.

The Union Leader petitioned this court to grant its request for access to documents it asserts are "court records." It relies exclusively on Part I, Article 8 of the New Hampshire Constitution, which provides:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted.

Because the Union Leader's petition rests solely upon Part I, Article 8, we confine our analysis and conclusions to this constitutional provision.

■ There can be no dispute that Part I, Article 8 applies to court records and that the public is generally afforded unfettered access to them. *See Petition of Keene Sentinel*, 136 N.H. 121, 128 (1992). Such access is critical to ensure that court proceedings are conducted fairly and impartially, *see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993), and that the judicial process is open and accountable. *See* N.H. CONST. pt. I, arts. 8, 22. The right to open courtrooms and access to court records related to court proceedings is firmly supported by New Hampshire practice and common law principles, Part I, Articles 8 and 22 of our State Constitution and our guidelines for public access. *See Thomson v. Cash*, 117 N.H. 653, 654 (1977); *Petition of Keene Sentinel*, 136 N.H. at 126-28; GUIDELINES FOR PUBLIC ACCESS TO COURT RECORDS, *reprinted in* NEW HAMPSHIRE COURT RULES ANNOTATED 1143 (Lexis 2001-2002).

The courts of this State "have always considered their records to be public, absent some overriding consideration or special circumstance." *Thomson*, 117 N.H. at 654. Under our constitutional and decisional law, a party seeking closure or nondisclosure of court records has the burden to demonstrate, with specificity, a sufficiently compelling interest, outweighing the public's right of access. *Petition of Keene Sentinel*, 136 N.H. at 128. Where no special circumstance exists, however, "those things which are filed in court in connection with a pending case" are accessible to the public. *Thomson*, 117 N.H. at 654. "This appears to be the almost universal rule dating from the earliest times." *Id.*; *see also F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 409 (1st Cir. 1987) ("documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become

documents to which the presumption of public access applies"); *Leucadia*, 998 F.2d at 161-62 (surveying federal courts that recognize "the principle that the filing of a document gives rise to a presumptive right of public access"). Of course, public access is limited by certain court rules and statutes. *See, e.g.*, RSA 169-B:35 (Supp. 2001) (confidentiality of juvenile records); *Petition of State of N.H. (Bowman Search Warrants)*, 146 N.H. 621 (2001) (qualified right of access to search warrants).

■ Here, the petitioner seeks documents that have not been "filed in court in connection with a pending case." *Thomson*, 117 N.H. at 654; *see also Standard Financial Management Corp.*, 830 F.2d at 409. In sum, the documents sought are not court records. Rather, they are records of meetings of superior court judges concerning internal management and operation of the court that do not directly relate or pertain to court proceedings or the superior court's adjudicatory functions. The petitioner would have us interpret Part I, Article 8 so broadly as to mandate public access to all records related to any superior court activity, including its nonadjudicatory activities. We find no case from this or any jurisdiction, nor does petitioner identify any, establishing that materials unrelated to the adjudicatory function of the courts have historically been open to public inspection or considered to be court records for purposes of public access. *Cf. Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (qualified right of access attaches only if place and process have historically been open to public and access would play significant positive role in functioning of process in question).

By analogy, adopting the petitioner's broad definition of "court records" would also affect other branches of government. For example, any records relating to meetings between the Attorney General and staff to discuss the day-to-day administrative operation of the Attorney General's office may be open to public inspection under Part I, Article 8. Likewise, the public could demand access, based upon Part I, Article 8, to any record regarding meetings between the Governor and staff or between the Governor and a member of the executive council or, in fact, a meeting between the Speaker of the House and senior staff. If the suggested access were permitted, government might become unduly cumbersome and candor among government officials stifled. It cannot be overlooked that the public's constitutional right of access is meant to satisfy an "end"; to wit, that government "should be open, accessible, accountable and responsive." N.H. CONST. pt. I, art. 8. This "end" can and should be accomplished without severely curtailing the efficient operation of the government.

■ We decline the invitation to expand the common, long-standing and well-accepted definition of court records under Part I, Article 8 to include

records unrelated to the superior court's adjudicatory function. In so doing, we underscore the critical and historic imperative for an open and accessible judiciary to ensure that court proceedings are fair and that the judicial process is public and accountable. The public and open nature of New Hampshire's courtrooms and the availability of court records filed or generated in connection with judicial proceedings meet the constitutional mandate that the judicial branch be "open, accessible, accountable and responsive," and that access to its court records not be unreasonably restricted. N.H. CONST. pt. I, art. 8.

*Petition denied.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.